JONES v. PUCKETT et al.   (No. 11117.)

(Court of Civil Appeals of Texas. Fort Worth. May 30, 1925. Rehearing Denied June 27, 1925.)

**1. Bonds ⊂⟹122 — When joint obligees may maintain separate action stated.**

Joint obligees under a bond as a general rule should join as plaintiffs, although action may be brought for separate interests, if sufficient excuse for not joining the co-obligees is alleged in the petition.

**2. Guardian and ward ⊂⟹182(4)—What constitutes sufficient excuse for not joining co-obligees under guardian's bond stated.**

Refusal of some of the joint obligees under a guardian's bond to join in a suit, or the prior settlement of their interests, *held* to constitute such an excuse as will permit one or more of the remainder to maintain action for their separate interests.

**3. Pleading ⊂⟹8(11) — Allegations held sufficient to show minor children's title to land and proceeds of sale by guardian.**

In action against a surety on a guardian's bond by one of the obligees for money due on land sold by the guardian, allegation that the guardian listed the land as his ward's property and charged himself therewith in the inventory verified by him, executed a bond as guardian for all the property, together with statements in his application for letters of guardianship to effect that land belonged to wards, *held* sufficient to show plaintiff's title in the land and proceeds of its sale and not mere conclusion of pleader.

**4. Evidence ⊂⟹383(3)—Certified copy of probate proceedings in guardian's sale of property held to establish prima facie proof of wards' allegations of amount of indebtedness.**

In a wards' action against a surety on guardian's bond for money due on land sold by guardian, a certified copy of probate proceedings of the sale of the property *held* to establish prima facie proof of the amount of the guardian's indebtedness.

**5. Guardian and ward ⊂⟹182(6)—Presumption that guardian performed duty of collecting lien notes on property sold.**

In an action against a surety of a guardian's bond, where probate proceeding disclosed that deceased guardian sold his wards' property and secured the balance of the purchase price by vendor's lien notes, the cash payment being less than one-third of the value of the land, it is presumed, as against the surety, that the guardian performed his duty in collecting these notes.

**6. Guardian and ward ⊂⟹182(7) — Individual award to remaining obligees of guardian's bonds increased, where some relinquish claim.**

In an action on a guardian's bond for the estate of five minor children, where one of the wards released the guardian from any claim he might have, a judgment on the bond awarding each of the remaining wards one-fourth the entire amount of the bond was proper, as against a contention that only one-fifth should have been allowed.

**7. Guardian and ward ⊂⟹182(7)—Allegations of surety of deceased guardian's bond held insufficient to support judgment over against children's share in guardian's estate.**

Where a surety sued on a deceased guardian's bond for his minor children prayed for judgment over against the children's share in the guardian's estate, but failed to allege in the plea over that there was property belonging to guardian's estate over and above any indebtedness chargeable against it, or that the judgment recovered against him could not be established as a claim against the guardian's estate, the only proof being that certain property of deceased guardian was being administered, *held* that there was no sufficient basis for a recovery against the children for any amount whatever.

Appeal from District Court, Tarrant County; S. C. Rowe, Special Judge.

Action by L. L. Puckett and another against W. E. Jones. Judgment for plaintiffs, and defendant appeals. Affirmed.

Marvin H. Brown, of Fort Worth, for appellant.

Burney Braly, of Fort Worth, for appellees.

DUNKLIN, J. W. E. Jones, who was a surety on the bond of G. W. Puckett, now deceased, as guardian of the estates of his five minor children, has appealed from a judgment rendered against him in favor of L. L. Puckett and J. L. Puckett, two of said wards.

The guardianship proceedings were in the county court of Armstrong county, and on September 21, 1891, that court appointed G. W. Puckett guardian of the estates of his five minor children, namely, Capers A. Puckett, Lilla M. Puckett (now Mrs. Lilla M. Rice, wife of J. V. Rice), Nick W. Puckett, John L. Puckett, and Larkin L. Puckett. On September 23, 1891, G. W. Puckett filed in said court his guardianship bond with W. E. Jones, defendant in the suit, and W. M. Warren, now deceased, as sureties in the sum of $1,500, which was the amount fixed by the court as the amount of the bond to be given. That bond was duly approved by the county judge. On the same day, G. W. Puckett filed his oath as guardian in compliance with the statutory requirements. On September 23, 1891, G. W. Puckett also filed an inventory

and appraisement of the property belonging to the minors. 102½ acres of land situated in Collin county was listed in the inventory as property belonging to the minors which was appraised at $3,175; and attached to the inventory was the affidavit of G. W. Puckett containing the statement that it was a true and correct inventory and list of all the property, real and personal, belonging to the estates of said minors. On October 30, 1891, the guardian filed in the county court an application for an order authorizing him to sell the land described in the inventory theretofore filed. On December 26, 1891, the court granted the application, and ordered the sale of the land to be made at private sale for part cash and the balance payable in one, two, and three years with interest at the rate of 10 per cent. per annum. On the same day, the guardian filed his report of the sale of the property for the sum of $3,375, of which amount $1,000 was paid in cash and the balance in three annual installments, due one, two, and three years after date, bearing interest at the rate of 10 per cent. per annum, and secured by a vendor's lien on the property sold. On January 2, 1892, the report of the sale was approved by the court, and the guardian ordered to execute a deed to the property to the purchaser, and on the same day the guardian executed a deed to the purchaser reciting receipt of $1,000 in cash and promissory notes of the purchaser aggregating $2,375 due one, two, and three years after date, and secured by a vendor's lien on the property.

G. W. Puckett died on June 30, 1923. After procuring the order of the county court approving his report of the sale of the land, he filed no other papers in that court, and no further orders were made, and no other proceedings were had in the county court relative to the guardianship. The proof further shows that W. M. Warren, the other surety on the guardianship bond, died before the institution of the suit. It further appears from the evidence that Mrs. Ellen White Puckett, the wife of the guardian and mother of the minor children, died November 13, 1880, and that a sixth child, Ezra, who was living at the time of the death of the mother, has since died. There was some suggestion in the testimony, introduced upon the trial, that the tract of land, described in the inventory, filed by the guardian, belonged to the community estate of the guardian and his deceased wife, and in plaintiffs' petition it was alleged that the interest of each plaintiff in the proceeds of the sale of the land was $281.25, which was one-sixth of one-half of the amount realized from the sale by the guardian. Apparently, that computation was upon the theory that the land was community property of the guardian and his deceased wife, and that the minors named in the guardianship proceedings, in fact, only

owned five-sixths of one-half of the land and the same proportion of the proceeds of the sale thereof. But plaintiffs each sued for interest on $281.25 from January 2, 1892, the date of the guardian's sale, up to January 2, 1901, the date which it was alleged plaintiffs reached their majority, at the rate of 10 per cent. per annum, which, it was alleged, plaintiffs could have realized by lending the money, and in the alternative at the rate of 6 per cent. per annum from January 2, 1892, until June 30, 1923. The amount awarded each plaintiff was $375, which is recited in the judgment as being one-fourth of the entire penalty of $1,500 named in the bond.

In their petition, plaintiffs alleged that Capers A. Puckett had released G. W. Puckett, while living, from any liability to him on the bond, and that their sister, Mrs. Lilla M. Rice, and their brother, Nick W. Puckett, had refused and declined to join the plaintiffs in the suit, and the uncontroverted testimony, introduced upon the trial, sustained those allegations.

[1, 2] It appears that the guardian's bond was joint in form for the benefit of the five wards named, whose interests, however, were several. While, as a general rule, all joint obligees in such an instrument should join as plaintiffs, yet one or more may maintain an action thereon for their separate interests without joining the other, if a sufficient excuse for not joining the co-obligees is alleged in the petition. And it has been held that the refusal of some of the obligees in such a bond to join in the suit, or the prior settlement of their interests, will constitute such excuse. Roberson v. Tonn, 76 Tex. 535, 13 S. W. 385; 9 Corpus Juris, pp. 87–89, and other decisions cited in support of the text; 28 Corpus Juris, p. 1311. Hence, there is no merit in the assignments presenting the questions of nonjoinder and misjoinder of parties, nor in the further contention that the court with without jurisdiction to determine the amount in controversy, since the claims of the two plaintiffs aggregated $562.50, exclusive of interest. Carlile v. Eldridge, 1 White & W. Civ. Cas. Ct. App. § 986.

[3-5] The allegations in plaintiffs' petition that the guardian listed the land as the property of his wards and charged himself therewith in the inventory, verified by him, executed a bond as guardian for all that property, together with statements in his application for letters of guardianship to the effect that the land belonged to the wards, were sufficient to show the title claimed by the plaintiffs in the land and the proceeds thereof, and the petition was therefore not subject to the exception presented by the defendant that the allegation of ownership was a mere conclusion of the pleader. Furthermore, a certified copy of those probate proceedings established prima facie proof of those allegations of the amount of indebted-

ness for which judgment was rendered, even though the assignment of fundamental error on that point be considered sufficient to present that question. It was the duty of the guardian to collect the vendor's lien notes given in part payment for the land, and the presumption must be indulged that he performed that duty, especially in view of the fact that it appears that the cash payment made at the time of the sale was less than one-third of the value of the land. U. S. Fidelity & Guaranty Co. v. Hall (Tex. Civ. App.) 173 S. W. 892; 28 Corpus Juris, 1318. The allegations with respect to the refusal of two wards to join in the suit, and the release of the guardian by the other ward, were proper to show an excuse for not joining those wards as coplaintiffs in the suit.

[6] The judgment rendered in favor of each plaintiff was for $375, which was one-fourth of $1,500, the entire amount of the bond. Appellant insists that since there were five obligees named in the bond, the recovery of each plaintiff should have been limited to $300, or one-fifth of the total amount of the bond. There is no merit in that contention, since Capers A. Puckett, one of the wards, testified on the trial of the case without contradiction that he had released his father, G. W. Puckett, of any claim he might have by reason of his interest in the guardianship proceedings. It thus appears that the remaining four obligees are the only persons interested in the bond to whom the bondsmen could possibly be held liable, and the amount awarded to each plaintiff was only one-fourth of $1,500. Lynch v. Bernhardt (Tex. Civ. App.) 201 S. W. 1051.

[7] In appellant's pleadings, he prayed for judgment over against the plaintiffs' interest in the estate of their father, G. W. Puckett, for such sum or sums as plaintiffs might recover against him. In that pleading it was alleged that plaintiffs were two of the heirs of their father, G. W. Puckett, deceased, and that as such heirs they had inherited their proportionate part of the estate left by G. W. Puckett, which estate the defendant was informed and believes and charges is of the reasonable value of $3,000. But there is an absence of any allegations with respect to what the property consisted of, where situated, the names of other heirs, the extent of interest of plaintiffs in the estate, whether or not there are creditors having claims against the estate, whether the estate has been administered, or any other fact showing that there is property belonging to the estate over and above any indebtedness chargeable against it. Nor was there any allegation, in the plea over, that appellant cannot have the judgment recovered against him by plaintiffs established as a claim against the estate of G. W. Puckett in the probate court.

Furthermore, counsel for defendant testified that he was the attorney for the executrix of the will of G. W. Puckett, deceased, and that lot 18, block 49, in the town of Clovis, N. M., belonged to G. W. Puckett at the time of his death, and that the same is being administered upon now by the executrix of the estate. That was the only proof offered on defendant's plea over against plaintiffs. Under such circumstances, there was no sufficient basis for a recovery in favor of appellant over against the appellees for any sum whatever.

For the reasons noted, all assignments of error are overruled, and the judgment is affirmed.